UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| DAVID DAGER, GREG IIAMES, DANNY BOYD, and other similarly situated employees, | ) ) ) ) | |
| Plaintiffs, | ) ) | 2:06-cv-01412 JWS |
| vs. | ) ) | ORDER AND OPINION |
| CITY OF PHOENIX, a body politic, | ) ) ) | [Re: Motion at docket 18] |
| Defendant. | ) ) ) | |

## I.  MOTION PRESENTED

At docket 18, plaintiffs moved for leave to give notice to potential class members. The motion is opposed by defendant City of Phoenix and has been fully briefed.  Oral argument has not been requested and would not assist the court.

## II.  BACKGROUND

Plaintiffs allege violations of the overtime compensation requirements of the Fair Labor Standards Act ("FLSA").[1]  Plaintiffs claim that defendants violated the FLSA by not paying for the time employees spend donning and doffing their uniforms, gear, and equipment.  The FLSA provides that an employer who fails to pay wages due is liable

---

[1] 29 U.S.C. § 201, *et seq.*

for the amount of the unpaid wages plus an equal amount as liquidated damages.[2]
Where the Secretary of Labor has not filed a lawsuit seeking relief, the same statutory
provision authorizes an employee to sue on behalf of himself and others similarly
situated, but no employee is a party unless he gives written consent.  "Once the consent
is filed, the section 216 action is maintained by the named plaintiffs for and in behalf of
the person who has consented."[3]

     This case was initiated by the three individual plaintiffs named in the caption, but
an additional 559 employees have already consented to join as plaintiffs,[4] bringing the
total to 662 employees.  Of the total, 203 consents were filed on or after the date when
the motion seeking leave to give court-assisted notice was filed.[5]

     In the meantime, defendant filed a motion asking the court to require plaintiffs to
provide a more definite statement of their claims, which was granted.[6]  A first amended
complaint was filed,[7] and cured the main defect in the original complaint by making clear
that plaintiffs are only seeking to represent those of defendant's employees whose jobs
require them to wear uniforms and equipment.  Unfortunately, the first amended

---

[2]29 U.S.C. § 216(b) (2000).

[3]*Shushan v. Univ. of Colorado at Boulder*, 132 F.R.D. 263, 264 (D. Colo. 1990) (internal quotations omitted); 29 U.S.C. § 216(b) (2000).

[4]The original 3 plaintiffs filed consents at docket 10.  Thereafter, consents were filed at dockets 13 (32 employees), 14 (239 employees), 15 (27 employees), 16 (58 employees), 17 (78 employees), 23 (52 employees), 29 (70 employees) and 32 (3 employees).

[5]Docs. 17, 23, 29, and 32.

[6]Doc. 30.

[7]Doc. 31.

complaint does not eliminate the ambiguity created by the reference to both 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs have requested leave to file a second amended complaint, which includes allegations of violations of Arizona Revised Statute § 23-392.[8]  The second amended complaint again states that plaintiffs bring their FLSA action pursuant to both Section 216(b) and Rule 23.[9] However, by making the motion to proceed with notice pursuant to the FLSA, plaintiffs signaled that they are in fact pursuing their class claim under the FLSA with its "opt in" structure[10] rather than attempting to pursue a class claim pursuant to Rule 23 which has an "opt out" structure.[11]

### III.  STANDARD OF REVIEW

While the FLSA does not specifically authorize a district court to participate in the giving of notice to prospective class members, the United States Supreme Court has indicated that as a function of the court's case management authority, it has the discretion to, and perhaps often, should do so.[12]  The benefits of a Section 216(b) collective action, "depend on employees receiving accurate and timely notice concerning the pendency of the collective action."[13]  However, the Supreme Court

---

[8]Doc. 34, 35.

[9]Doc. 35 at 3.

[10]29 U.S.C. § 216(b).

[11]Fed. R. Civ. P. 23(c)(2)(B).

[12]*Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170-72 (1989) (construing district court's authority in an ADEA action which incorporates the FLSA class standard).

[13]*Sperling*, 493 U.S. at 170.

stopped short of indicating that it is proper for a district court to include a statement in the notice that the notice has been authorized by the district court.

Circuit and district court case law has embellished on the Supreme Court's discussion of a district court's involvement in the FLSA notice process. Neither the FLSA nor the Ninth Circuit has defined "similarly situated."[14] The Ninth Circuit has noted that in order to facilitate the process of opting-in by "similarly situated" employees, a district court may authorize the named plaintiffs in a FLSA suit to send notice to potential plaintiffs.[15] The Ninth Circuit has not ruled on methods that district courts should use to determine if a potential plaintiff is "similarly situated" to the named plaintiffs in a FLSA action, and thus should be sent notice of the action.[16] Some Ninth Circuit district courts have noted that the plaintiffs bear the burden of making a showing that the "proposed lead plaintiffs and the proposed collective action group are 'similarly situated' for purposes of § 216(b)."[17]

As noted by the Tenth Circuit, there is in fact generally "little circuit law" that defines "similarly situated," although district courts have developed three main approaches to determine if plaintiffs are similarly situated.[18] These approaches are the

---

[14]*Morden v. T-Mobile USA, Inc., No. 05-2112RSM,* 2006 WL 2620320 at *2 (W.D. Wash. Sept. 12, 2006).

[15]*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000).

[16]*Morden*,  2006 WL 2620320 at *2.

[17]*Leuthold v. Destination America,* Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004) (citing *Pfohl v. Farmers Ins. Group,* No. 03-3080, 2004 WL 554834, at *2 (C.D. Cal. Mar. 1, 2004)).

[18]*Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

-4-

two-tiered or *ad hoc* (also called "conditional certification") approach,[19] the application of

the standards and requirements of Rule 23 of the Federal Rules of Civil Procedure,[20]

and the application of the requirements of the pre-1966 version of Rule 23.[21]

District courts in the Ninth Circuit have generally chosen to use the two-tiered

approach to determine whether plaintiffs in a Section 216(b) action are "similarly

situated."[22]  Some Ninth Circuit district courts have chosen not to specifically label the

approach used by the court.[23]

---

[19]*Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) (calling the approach the "two-tiered approach")*; Thiessen,* 267 F.3d at 1102-03 (10th Cir. 2001) (referring to the "*ad hoc*" approach); *Morden,* 2006 WL 2620320 at 1-2 (describing "conditional certification").

[20]*Thiessen*, 267 F.3d at 1103 (describing the approach, which analyzes whether the four prerequisites of Rule 23(a) as well as the requirement of Rule 23(b)(3) (that common questions of fact predominate) are met).

[21]*Thiessen*, 267 F.3d at 1103 (noting that this approach focuses on the idea that the notes to the 1966 amendments to Rule 23 indicate that the 1966 amendments were not meant to affect § 216(b) actions).

[22]*Morden,* 2006 WL 2620320, at *2 (stating that "it appears that the district courts in this circuit have used an *ad hoc,* two-tiered approach" and choosing to also use the two-tiered approach); *Fichtner v. American Family Mutual Ins. Co.,* No. 02-6284, 2004 WL 3106753, at *10 (D.Or. March 4, 2004) (noting that "[j]udges of this court have applied the two-tier approach" and that "this court opts for such an approach as well");  *Avila v. Turlock Irrigation Dist.*, No. 06-00050, 2006 WL 3201083 at *3 (E.D.Cal. Nov. 6, 2006) (noting that most courts prefer the two-tiered approach);  *Stanfield v. First NLC Financial Services, LLC*, No. 06-3892, 2006 WL 3190527 at *2 (N.D.Cal. Nov. 1, 2006) (applying a two-tiered analysis to grant "conditional certification" of a collective action under Section 216(b)); *Ingersoll v. Royal & Sunalliance USA*, No. 05-1774L, 2006 WL 859265 (W.D. Wash. Feb. 10, 2006) (joining "a majority of courts" in adopting the two-tier approach); *Fichtner v. American Family Mutual Ins. Co.*, No. 02-6284, 2004 WL 3106753 at *10 (D.Or. Mar. 1, 2004) (noting that "[j]udges of this court have applied the two-tier approach" and that "this court opts for such an approach as well"); *Leuthold v. Destination America, Inc.,* 224 F.R.D. 462, 467 (N.D.Cal. 2004) (applying a two-tiered analysis and noting that "the majority of courts have adopted it").

[23]*Wertheim v. Arizona*, , NO. 92-0453, 1992 WL 566321, at *3, 5 (D.Ariz. Aug. 4, 1992) (rejecting plaintiffs proposed definition of a class and noting that "plaintiff has not provided a sufficient factual basis in this case to indicate that the employees he seeks to include" were impacted by a similar plan to deny them overtime and on-call status compensation)`; *Sheffield v.*

Under the two-tiered approach, a court first decides if a group of potential plaintiffs (often referred to as a potential "class") should be sent a notice of the action.[24] The first-tier analysis usually occurs early in litigation, and thus courts, "generally ha[ve] a limited amount of evidence" with which to make a decision to notify members of the potential class.[25]  A court usually bases its first-tier decision "primarily on the pleadings and any affidavits submitted by the parties."[26]  If the court "conditionally certifies" the class, then potential class members are given notice and the chance to opt-in to the action, which "proceeds as a representative action throughout discovery."[27]

Circuit courts examining the two-tier test generally apply a lenient first tier standard.  The Tenth Circuit, in an ADEA collective action under Section 216(b), noted that at the first stage, a court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."[28] The Eleventh Circuit endorsed and encouraged use of the two-tier test and described

---

*Orius Co.*, 211 F.R.D. 411, 416 (D. Or. 2002) (noting that while a unified plan of discrimination might not be required to show that plaintiffs are "similarly situated, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency").

[24]*Leuthold*, 224 F.R.D. at 467.

[25]*Id.*

[26]*Id.*

[27]*Hipp*, 252 F.3d at 1218 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

[28]*Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Co.*, 175 F.R.D. 672, 678 (D.Colo. 1997) (internal quotation marks omitted)).

the first tier as making a decision "usually based only on the pleadings and any affidavits which have been submitted."[29]

Generally, in the Ninth Circuit, district courts also apply a lenient standard at the first tier.[30]  For instance, the court in *Fichtner v. American Family Mutual Insurance Company* noted that the "similarly situated" standard of Section 216(b) is less stringent than the requirements of Federal Rule 23(b)(3) and, according to the Eleventh Circuit, Federal Rule 20 (joinder).[31]  In *Leuthold v. Destination America, Inc.*, the district court noted that for the first tier, some courts require only that plaintiffs make "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision."[32]

The second stage of the two-tier test generally occurs at the conclusion of discovery and is "often prompted by a motion to decertify."[33]  The second tier determination is stricter and a court reviews several factors to make its determination.[34]

---

[29]*Hipp,* 252 F.3d at 1218, 1219 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).

[30]*Pfohl v. Farmers Ins. Group*, No. 03-3080, 2004 WL 554834 at *2 (C.D. Cal. Mar. 1, 2004) (noting that "[b]ecause of the minimal evidence at this stage, this determination is made based on a fairly lenient standard"); *Fichtner,* 2004 WL 3106753 at *10 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988) for the proposition that at the notice stage courts usually require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination").

[31]*Fichtner,* 2004 WL 3106753 at *10 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)).

[32]*Leuthold*, 224 F.R.D. at 468 (internal citations omitted).

[33]*Thiessen*, 267 F.3d at 1102-03.

[34]*Id.* at 1103.

-7-

These factors include "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations."[35]  If the court finds, "on the basis of the complete factual record" that plaintiffs are not similarly situated," then the court may "decertify the class and dismiss the opt-in plaintiffs without prejudice."[36]

## IV.  DISCUSSION

This court will follow the majority of district courts in the Ninth Circuit and apply the two-tiered approach to certification of the opt-in plaintiff group or "class."  Plaintiff's memorandum in support of its motion for leave to give notice to potential class members does not describe with enough specificity the potential plaintiffs to be notified.  Plaintiffs note that their claims "challenge a practice that permeates the Police Department and impacts potential class members to a similar degree."[37]  However, besides Police Department employees, plaintiffs do not identify the groups of City employees they wish to notify, or how plaintiffs intend to obtain the names and addresses of *any* of the potential plaintiffs.[38]  Plaintiffs merely state that the notice proposed by the plaintiffs would help identify employees of the City of Phoenix who are subject "to a policy having the effect of denying compensation for the time spent maintaining, donning and doffing

---

[35]*Leuthold*, 224 F.R.D. at 467.

[36]*Id.*

[37]Doc. 19 at 7.

[38]Doc. 19 at 7.

specialized protective gear and unique uniforms."[39]  The purpose of notice is to promote efficiency and to effectively manage an action.[40]  Sending notice to hundreds or thousands of employees, with scant knowledge of whether they may qualify as potential plaintiffs, would not be efficient case management, and might confuse recipients of the notice.  As noted by another court of this district, authorizing notice "to the broadest possible class of plaintiffs, based solely on plaintiff's unsupported allegations," is not "consistent with orderly management of the litigation."[41]  A determination of what groups of City employees must don, doff, and maintain uniforms and protective gear without compensation for the time spent doing so is a question better answered through discovery.  Plaintiffs note that "without the benefit of full discovery" it is "imprudent" to limit their claims to only police department employees.[42]  While this is true, plaintiffs could request discovery to determine what other employees of the City are similarly situated, and even request discovery of the names and addresses of potential plaintiffs to be sent notices.  The Supreme Court in *Sperling* noted that the district court in that case was "correct to permit discovery of the names and addresses" of similarly situated employees.[43]

As plaintiffs note, courts have found that named plaintiffs need only make "substantial allegations that the putative class members were together the victims of a

---

[39]Doc. 27 at 2.

[40]*Wertheim v. Arizona*, No. 92-453, 1993 WL 603552, at *1 (D.Ariz. Sept. 30, 1993).

[41]*Wertheim*, 1992 WL 566321, at *5.

[42]Doc. 27 at 4.

[43]*Sperling,* 493 U.S. at 170.

single decision, policy, or plan." [44]  Plaintiffs in this action have not met this threshold.

While plaintiffs baldly allege that "[d]efendants' common procedures and policies are

centrally formulated and dictated by Defendants," they do not allege with any specificity

what division or official(s) of the City of Phoenix makes these uniform decisions

regarding overtime pay for donning and doffing uniforms across departments.[45]

Plaintiffs only submit evidence of the police department's uniform policy.[46]  However,

plaintiffs appear to desire to include more than just police officers in the action.

Plaintiffs have not successfully described a "similarly situated" class of potential

plaintiffs, and court-assisted notice to the broad class suggested by plaintiffs would not

assist litigation at this stage.  In addition, while court-assisted notice might be beneficial

to management of this action, plaintiffs have not adequately established that court

assistance is needed, given that they have already been able to secure the participation

of over 600 individuals.[47]

### V.  Conclusion

For the reasons above, the motion at docket 18 is **DENIED**.

DATED at Anchorage, Alaska, this 15th day of December 2006.

/s/     JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[44]Doc. 19 at 3 (quoting *Fichtner,* 2004 WL 3106753, at *9) (internal quotations omitted).

[45]Doc. 19 at 9.

[46]Doc. 19, Ex. A, B.

[47]Doc. 10, 13, 14, 15, 16, 17, 23, 29, and 32.